The next case is number 22-9001, Anne Tracey Botelho v. Mary E. Buscone. At this time, would Attorney Baker please take the podium and introduce himself on the record to begin? Good morning. My name is David Baker. I'm here on behalf of Appellant Mary Buscone. If I may, I'd like to reserve two minutes for rebuttal. Certainly. Thank you, Your Honor. This case is a perfect example of a cardinal rule that I encourage my clients to understand and adhere to. That being, never do business with family or friends because something inevitably goes wrong. You'll alienate your friends and lose, I'm sorry, you'll lose your friends and alienate your family. The parties to this matter were friends. They're neighbors. In 2012, they decided to go into business together as a partnership to operate, open and operate. Mr. Baker, thank you. We have read this very carefully. We do know the background. Could you get to the legal issues? Certainly, Your Honor. Why are the various rulings an abuse of discretion? Okay. And I defer to Judge Helpe. And my question is similar to what Judge Lynch said, abuse of discretion. Isn't this a case, family or friends, isn't this a case where there's a failure to comply with the SCOBRI obligations and court orders? It seems to me that that's the crux. Well, that's certainly the allegation. We disagree profoundly. We raised the abusiveness and excessiveness of the discovery request several times, but the bankruptcy judge didn't even consider it. Well, did you file written objections? When you say file, I'm not sure what you mean. With the court or with Mr. Usually if you don't want to answer a question, you list the interrogatory number and you say objection to answering it and you state the legal basis of the objection and then you move on to the next one and you either answer it or object to it. So did you do that? Yes. Several times. But when the court issued its ruling, whether it's lengthy or it's too much discovery, whatever, the client has to comply unless you're able to get a mandamus from the district court at some point. But that was never appealed. It was appealed eventually to the back. Well, we raised the issue several times before the judge. So the other side filed the motion to compel and you had a hearing before the judge and he didn't find merit to your objections and he ordered you to either answer the interrogatory or produce the documents. That's right. And we produced what we could and we answered the questions that we could. In some cases, to follow up on Jotelke's comment, we said that we considered the question to be overly broad and exceedingly difficult to answer. But if the judge denies your objection, your client has to comply with that. Arguably, yes. But how can we do that? If we don't know the answer to it or we don't have the documents, we can't comply with that part of the order. For instance, some of the documents were eventually produced through the issuance of subpoenas. Your client could have done a diligent pursuit of the documents herself. Well, she did. I can't fully fault her for not doing what she could to comply. She provided what she had, what she could reasonably be expected to get. The judgment just disappeared. Mr. Baker, go ahead. Thank you. I believe I was saying that I agree, of course, Judge Jotelke, that we have to comply with the court orders, comply with discovery requests. But the problem here, from my perspective, is that it was impossible to do so. It was asking for things we don't have. Why wasn't then, for example, a statement under penalty of perjury or an adequate response saying, Judge, these documents are unavailable, or we are not able to respond because X or Y or Z? I've handled discovery over the years, and that's how it's done. Why wasn't that done in New York? Because there are repeated orders and warnings, and, again, no discovery, no discovery, no discovery. They were done, Your Honor. The problem, again, from my perspective, is that the appellees seem to be refusing to understand or to admit that the documents weren't available or that the questions couldn't be answered. The other part of the problem here is that at one point, Judge Bailey of the Bankruptcy Court, who is now retired, said that all objections are waived. That was a sanction for not complying. I understand that, but it creates an impossible situation. How can we comply with the request for these documents if we don't have the documents? How can we answer a question that is so broad and vague that any answer is going to be deemed unresponsive? It was just an impossible situation, and I tried on several occasions to work with Mr. LaPorte to find out more specifically what he wanted and why he thinks or thought that we had those documents or we were able to answer that question, and his response was to run into court with another discovery motion. Well, it's not God. I'm sorry, Judge Lynch. Go ahead. Do you have another argument? Yes. I think the strongest argument we have here is the judicial esophel argument. There's no dispute whatsoever that the appellee failed to list a claim against my client in her own Chapter 7 bankruptcy several years before this case was filed. Why was it an abuse of discretion given there was an affidavit saying it was inadvertent and based on misunderstanding? Tell us how it was an abuse of discretion for the bankruptcy court to rule as it did. Because this court has consistently held that inadvertence and mistake aren't strong enough reasons to avoid judicial esophel. Furthermore, we provided an affirmation of the appellee's bankruptcy attorney, Ann White, that's in the record at page 160, testifying essentially to what that attorney did in terms of advising Ms. Botello what she'd had to do. The attorney basically said she couldn't remember the case. Yes, but she outlines her usual procedure. She's a very competent lawyer. She's now a Chapter 7 bankruptcy trustee herself. Where is the abuse of discretion in not applying judicial esophel? I'm looking at the bankruptcy appellate panel opinion, page 22, and it notes that, at least the panel said, the bankruptcy court did not abuse of discretion in declining to apply judicial esophel given the doctrine's hazy contours. So is that an abuse of discretion? Because it's not clear how that doctrine applies. So where's the abuse of discretion? Well, I don't necessarily agree that the contours are hazy. I think it's pretty straightforward. If an asset is not listed in the schedules, I think there's no dispute that it wasn't, it's not something that could be repaired. I believe I cited a case from the Tenth Circuit that said it said as much. Is it something that can't be repaired because it's a possible asset that should have been available for the creditors at the time? That's correct. And that because it wasn't listed? Didn't the trustee abandon? I mean, once it was reopened, didn't the trustee abandon the claim? Yes, oddly enough. And I say oddly enough because Judge Bailey decided that the amount of the claim was about $92,000. I can't imagine a Chapter 7 trustee not being interested in a $92,000 asset. And that, of course, is the other aspect. But that wasn't appealed. Pardon? That wasn't appealed. What wasn't? The abandonment. Oh, no. No, I don't think my client would have had standing to appeal it. And frankly, my client would be happy not to have to turn over an asset to the bankruptcy trustee. She would if required to, but she didn't have to. She wouldn't want to. But you stuck with it. And you stuck with it. All right. My brother stuck with it, yes. I say my time is up. Thank you. Thank you. Thank you, Mr. Baker. At this time, Mr. LaPorte, if you could introduce yourself on the record when you're ready to begin. Thank you, Deputy. My name is Thomas LaPorte. Good morning, panel. I represent the appellee Ann Tracy Botello. I'll get the rest of my documents. Thank you, Your Honors.  Thank you, Your Honors. First and foremost, with regard to what the panel has just heard, part of the course continues with regard to this litigation which started in state court, as the panel knows, in 2019. The adversary proceeding was begun in late 19 or 20. And the discovery odyssey that my client has been put through, and I don't choose words like that lightly, but it's applicable. There were no timely objections made, Judge Thompson, in response to proper responses to requests for interrogatories or requests for production of documents. The only objections raised were after Judge Bailey had found that the appellant's objections were waived. And this is after three extensions, which I agreed to, two of which were requested by the appellant, a local Rule 16B hearing off the record with Judge Bailey, where we specifically identified and narrowed down the issues to request for productions 10 through 14. My opponent, later, when those were not responded to, after he was given time to respond to those, so his client and he, claimed to be confused. My opponent has said to this panel that he tried to discuss these matters with me, but the record is replete, and I took pains and incurred lots of hours to get it right. Let me ask the counsel whether, we're coming to a point, this is not like discovery process before he gets to the judge. The motions for discovery actually got to the judge, and the judge ruled upon them, so it's no longer you involved in him, it's your opponent and the court. That's the situation. It's not the situation between opposing counsel at this point. I understood, Your Honor, and I'll get to my point, which I was taking a meandering path to, is that if the panel looks at pages 42 and 49, it will see that my opponent said, in response to my attempts, my multiple attempts to informally resolve those motions, there's nothing to discuss, and I quote that verbatim. Regarding judicial estoppel, and I'll finish up my comments with regard to my opponent's comments, the standard that my opponent cited is not inadvertence or neglect. The standard is, and the Hampshire v. Maine SCOTUS Supreme Court has said that a determination as to whether or not deceitful conduct or conduct that tends to undermine the judicial process or the integrity of the judicial process existed at the time of the, in this case, the 2014 omission of what was the contingent liquidated claim, item 21 on Schedule B, filed in 2014. At the time, payments were being made, by the way. All of this is in the record, and I have cited to the bankruptcy appellate panel in my brief because I did not want to expand the appendix unnecessarily. The problem with it not being listed is that it was a contingent claim that could have provided an asset for the benefit of the creditors, and I assume that there were creditors, other creditors. Yes. I'd like to respond to that. You were finished with your question, Judge Thompson. Yes. So it was an asset that wasn't available to them. I mean, that's the problem with applying, not finding judicial estoppel in a bankruptcy situation as opposed to other kinds of legal proceedings. I agree. And in that case, if an asset is deprived from the creditors, then that undermines judicial process. In this case, this did not happen. This is the situation where now your client will have the benefit of a judgment in her favor and will pursue remedies against the appellate in this case and acquire assets that could have been available for the benefit of the other creditors, and it will go instead directly to her because the trustee abandoned the claim. I can't speak for the trustee, John Desmond. He's been a trustee for quite some time. My client is mostly involved in this, and perhaps she's proceeding unlike a trustee, who I would imagine used an economic analysis to the determination of the collectability. But your client has a house with a lien on it, or a lien in favor of your client on the appellant's house. The lien was avoided, Your Honor, because it impaired an exemption. So she no longer has that lien. Moreover, the focus is on whether or not the bankruptcy record has been corrected. In fact, in this case, the schedules. We filed an ex parte motion under 11 U.S.C. 350B immediately and reopened the 2014 case. Judge Bailey allowed that. We refiled and listed the claim because it now had become a claim. Then in 2014, it was not what a lay person would understand to be a claim, and that jives with her affidavit, which is in the record, that a contingent liquidated the claim that was being then paid. And were creditors noticed? Yes, ma'am. Creditors were noticed as well as a U.S. trustee. Absolutely. We gave notice to all. In fact, I agreed that a trustee in trial court, in open court, should be appointed. Nothing to hide. Above board. And the case law says, if you look at the Ah Quin case, it's an informative case from the Ninth Circuit. And the 2006 case from this circuit says that in that case, then the judicial record is restored. There's no chance for undermining of judicial integrity. And that is what the courts are guarding against. The Wade case, which is heavily relied upon by opponent, has facts that are to the other extreme of what you might imagine here. There were lawsuits pending, two of them in district court, federal district court. They lied to the court when asked if those proceedings were then pending. And I could go on and on. It's all in the record. But these were blatant, brazen instances of deceitful conduct to hide these claims. And that's what the focus of judicial estoppel is about. And that's why the Supreme Court said the court should decide whether the application is appropriate in every case. And the focus is on whether the, in this case, the appellee engaged in any intentional or deliberate conduct. Counsel. Yes, Your Honor. So you keep arguing this as though it's purely a state law matter. And Judge Thompson has quite correctly reminded you of the purposes of the federal bankruptcy statute, which include marshaling all of the assets. And I tend to think this perhaps is more a federal law issue. Your response to that is, well, even under federal law, once we reopened and we gave notice to all of the creditors and to the trustee, that cured any possible issue of concern concerning the notice to potential creditors of the assets. Have I got that right? I would agree partially, Your Honor. My position is not just based upon what I responded with to Judge Thompson. I also refer to the 2020 case of Boudreaux that this circuit decided along the same lines. Now, I, of course, don't represent all of those creditors, Bank of America being one of them. So they're sophisticated creditors, most of them. I have a list here. I'd have to root through my papers to get them. I also don't stand in the shoes of the trustee, nor does the court, I say respectfully. So the analysis has been done by the court as to both whether there was an intent to deceit. This case is on all fours with the 2006 Thor case that leaves open the possibility that judicial estoppel should not be applied. In fact, New Hampshire v. Maine stated, Supreme Court stated, that court should be restrained where they find no intent. It did not speak to, admittedly, a scenario where a claim gets abandoned by the trustee and, therefore, creditors don't benefit. I advocate for one person, and this is what the law says. And I don't know if she'll ever collect anything, to be honest with Your Honor. This was the best friend. This was the next-door neighbor. This was a betrayal, and the lien has been avoided. So she does not have a lot of leverage at this time. If there's any other questions or any other issues, I'm happy to answer them. I have one other question. The bankruptcy judge used the figure from the schedule to reduce the debt to a sum certain. Why was it not improper for the court to do that rather than hold a hearing, particularly when there's been allegations that payments have been made? Two things, Your Honor. The state court, in fact, did monetize, come to the figure before interest of around $90,000. It was under Rule 55. But the judgment wasn't the figure that the bankruptcy judge used. That's because interest had accrued at the statutory rate of 12% under the Commonwealth of Massachusetts, which still applied to the judgment, even though we were in the bankruptcy proceeding. Moreover, the appellant herself, under penalty of perjury, set forth in Schedule E or F of her bankruptcy filing the figure. So the judge made the logical decision that she could not have testified in an evidentiary hearing, nor was the one ever requested, to contradict that statement made in her Schedules E and F as to what the figure was, which was around $93,000, I believe. So that is why an evidentiary hearing was not held and never requested. But a claim is different from a debt. So a claim might be a contingent claim without a sum certain, and something that on a schedule hasn't been reduced to an actual debt. And I know you're saying that you have a judgment here, but the judgment figure isn't the figure the court used. Well, the figure, I believe, was consistent with both the state court plus interest and the approximation, which I don't take issue. That was a close approximation. I could do the math, but it was in the low 90s, Your Honor, as to the scope of the non-discharge debt, which is the third issue in this case. But is that the way we come up with a debt figure? We approximate rather than require proof of what the debt is? Well, there was a statement made under penalty of perjury. That's what happened in this case. We have never objected to any evidentiary hearing. In fact, my client appeared at the motion to dismiss, which was converted to a motion to summary judgment voluntarily, ready to be cross-examined. And if this court believes an evidentiary hearing should be held, then we will do that, of course. Counsel, if I understood your argument, there was no request for an evidentiary hearing. And in any event, the appellant here filed under oath schedules E and F, which contained the sum certain and that any discrepancy is made up by the interest that was calculated to apply to that sum. Is that correct? That is my first impression as to why the approximate $3,000 difference might exist. Is that on the record? Is that on the record? Well, the entire record, the state court judgment, I believe, is at the trial court record. And the schedules certainly are, Your Honor. Schedule E and F. I'm going to eventually say yes, and I can probably find it. This is an enormous appendix, and I have referred to the addendum quite liberally, and I think that's very informative, the BAPS decision. I'm done, Judge Lynch. Judge Lynch can't see us. I'm done as well. Thank you. Actually, I can see you, but thank you, counsel.  And thank you, Mr. Baker. You can just introduce yourself when you're ready to begin. David Baker again for the appellant, Mary Biscroft. On the judicial estoppel point, I want to quote what this court said in Payless Wholesale Distributors v. Alberto Colvert, 989 S. 2nd, 570, 1993 decision. The court said, The basic principle of bankruptcy is to obtain a discharge from one's creditors in return for all one's assets except those exempt, as a result of which creditors release their own claims and the bankrupt can start fresh. Assuming there is validity in Payless's present suit, it has a better plan. Conceal your claims. Get rid of your creditors on the cheap and start over with a bundle of rights. This is a palpable fraud that the court will not tolerate, even passively. My point here is that the bankruptcy court and the bank both tolerated it and not passively. So the creditors who were given notice didn't appeal or object. That's the problem I'm having with the argument. The people who would have been harmed by the failure to list the claim weren't dissatisfied with the trustee abandoning it. Well, I think we're skipping past some time. Ms. Botello's petition, bankruptcy petition, was filed in 2014. The motion to reopen was filed five years later, 2019. But the record indicates that in 2019, those creditors were given notice, re-noticed, and they would have had an opportunity to object to the trustee's decision to abandon the claim and did not do so. Had they disagreed, they then could have appealed by making this judicial estoppel argument. Well, the problem with that point of view is that the court, again, this court has said that the bankruptcy court must defer to the sound business judgment of the trustee. Now, the trustee may have concluded that in his business judgment, it would be uncollectible, as Mr. LaPorte has suggested, and I think it probably will be. Or they could have simply not cared. After five years, a lot of the creditors will have written off that debt. So they probably might have just shrugged their shoulders and said, well, we'll wait until we see what the trustee does. Oh, he thinks there's nothing to do here, exercising his business judgment. So I don't think that the lack of objection from creditors really makes any difference here. Could you just say a word about the methodology the court used? The methodology the court used when it reduced the judgment to a some certain, I understand you have a jurisdictional argument about the propriety of that, but aside from that. Well, no, I can't because I don't know what procedure he used. He did, as you suggested, use a number in the schedules, and as you quite correctly noted, the existence of a claim is not the same as the existence of a debt. Because before it becomes a debt, it has to prove liability. In Chapter 7, no asset cases, the schedules primarily are used to determine whether the debtor is eligible for Chapter 7 bankruptcy. If there's restrictions in Section 109 of the Bankruptcy Code, it says if you have certain, have debts that exceed certain amounts, you can't file a Chapter 13 case. There's also the issue of the means test, which Congress adopted in 2005. If the means test shows that someone should be in Chapter 13, but because of their income, then we've got an issue where the claims that are listed in the schedules become material, and creditors must file a proof of claim. They don't file a proof of claim in a Chapter 13 case. They don't get paid. If this had been a... Counsel, you're well beyond time. Are there any further questions? Not from me. Almost it. I apologize for running over. I was just trying to be comprehensive. Yes, and we appreciate your zealous representation of your client. Thank you. Thank you. Thank you. That concludes argument in this case.